EXHIBIT 4

CONTRACT TO BE EXECUTED BETWEEN AN EMPLOYER
WHO IS NOT A MEMBER OF THE SIGNATORY GROUP
COVERED BY THIS AGREEMENT

and the

OPERATIVE PLASTERERS' AND CEMENT MASONS' INTER-
NATIONAL ASSOCIATION OF THE UNITED STATES
AND CANADA
and the
INTERNATIONAL UNION, BRICKLAYERS
AND ALLIED CRAFTSMEN

Firm Name

Address

Michigan Employment Security Commission Registra-
tion:

Number

Expires

Workers' Compensation Insurance:

Number

Expires

Insurance Firm

We, the undersigned, have read and hereby agree to
be bound by all the terms and conditions set forth
in the foregoing Agreement.

Signed this _10_ day of _August_, 19_3rd_

Firm Name: _Peerless Const_

By: _____

Title: _____

LOCAL UNION # _514_

By: _____

Title: _____

# 1983-1986

## AGREEMENT

between the

### LABOR RELATIONS DIVISION

of the

### MICHIGAN ROAD BUILDERS ASSOCIATION

and the

### OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION

of the

### UNITED STATES AND CANADA

and the

### INTERNATIONAL UNION, BRICKLAYERS AND ALLIED CRAFTSMEN

Effective June 6, 1983



1983 - 1986

# A G R E E M E N T

between the

LABOR RELATIONS DIVISION

of the

MICHIGAN ROAD BUILDERS ASSOCIATION

and the

OPERATIVE PLASTERERS' AND
CEMENT MASONS'
INTERNATIONAL ASSOCIATION
OF THE
UNITED STATES AND CANADA

and the

INTERNATIONAL UNION, BRICKLAYERS
AND ALLIED CRAFTSMEN

Effective June 6, 1983

# INDEX

| | Page |
|---|---|
| Apprentices | 31 |
| Apprenticeship Fund | 23 |
| Discharge | 21 |
| Extra Contract Agreements | 6 |
| Four Ten-Hour Day Work Schedule | 25 |
| General Provisions | 27 |
| Health and Welfare Fund | 22 |
| Industry Promotion Fund | 24 |
| Leadman | 21 |
| Liability of Parties | 26 |
| Limitations of Authority and Liability | 30 |
| Major Grievance Board | 7 |
| Military Clause | 30 |
| Notification | 11 |
| On-The-Job Trainees | 32 |
| Overtime | 24 |
| Parties to This Agreement | 28 |
| Pay Provisions | 21 |
| Pension Fund | 23 |
| Protection of Rights | 10 |
| Recognition-Union Shop and Dues | 2 |
| Saturdays-Sundays-Holidays | 25 |
| Scope of Agreement and Operations Covered | 2 |
| Separability and Savings Clause | 31 |
| Shift Work | 22 |
| Show-Up Time | 25 |
| Stewards | 4 |
| Subcontracting | 29 |
| Termination | 32 |
| Vacation Fund | 20 |
| Voluntary Quit | 21 |
| Wage Rates on Prevailing Wage Work | 11 |
| Wage Rates on Non-Prevailing Wage Work | 16 |
| Workers' Compensation | 30 |
| Zones | 11 |

(6/83)

# AGREEMENT

THIS AGREEMENT, made and entered into as of the 6th day of June, 1983, by and between the LABOR RELATIONS DIVISION OF THE MICHIGAN ROAD BUILDERS ASSOCIATION, with central offices located at Lansing, Michigan, for and on behalf of the membership,"hereinafter called the "Contractor" or "Contractors", as party of the first part, and the OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION OF THE UNITED STATES AND CANADA, and the UNION, BRICKLAYERS AND ALLIED CRAFTSMEN affiliated with the Building and Construction Trades Department of the AFL-CIO, hereinafter jointly and severally called the "Union", as party of the second part.

It is understood that the Labor Relations Division of the Michigan Road Builders Association is acting only as an agent in the negotiation of this Agreement, and that it is agent only for those Contractors (whether individuals, partnerships, corporations or joint ventures) who have authorized it so to act, and in no event shall it be bound as principal or be held liable in any manner for any breach of this Agreement by any of the Contractors for whom it is acting or any employees of such Contractors. It is further understood and agreed that the liabilities of the Contractors who have authorized the negotiation and execution of this Agreement shall be several and not joint.

The purpose of this Agreement is to determine the hours, wages and other conditions of employment, and to adopt measures for the settlement of differences and maintaining a cooperative relationship so as to have as much continuous employment for Contractors and workmen as possible without interruption by strikes, lockouts, or other labor trouble.

NOW, THEREFORE, in consideration of the mutual promises hereinafter set forth, the Contractors and the Union hereby agree as follows:

(6/83)

[1]

# A R T I C L E   I

## SCOPE OF AGREEMENT AND OPERATIONS COVERED

(a) It is understood and agreed that this Agreement shall cover all airport construction work (exclusive of buildings) and all highway and bridge construction work which any Contractor bound by this Agreement performs within the State of Michigan and which comes within the jurisdiction of the Union.

(b) "Highway Construction" work is defined as all work ordinarily included in public or private contracts for the construction of highways, roads and streets, whether inside or outside private property lines, such as, by way of example, bridges, sewers, and street grading, street paving, curb setting, sidewalks, parking lots, running tracks, bicycle paths, bridle paths and work connected therewith.

(c) "Airport Construction" work is defined as grading, paving, drainage and similar work incident to the construction of runways but excluding the construction of buildings.

(d) Any construction work not related to "highway construction" or "airport construction" as defined above shall not come within the scope of this Agreement.

# A R T I C L E   II

## RECOGNITION - UNION SHOP AND DUES

(a) The Contractor recognizes the Union as the sole and exclusive bargaining agent with respect to rates of pay and hours and the conditions of employment as called for by this Agreement, for all workmen performing the work within the classifications contained in this Agreement within the State of Michigan; and the Union recognizes the

Labor Relations Division of the Michigan Road Builders Association as the sole and exclusive bargaining agent for all of its members for the purpose of collective bargaining within the State of Michigan.

(b) When the Contractor needs additional help, it shall give the Union equal opportunity with all other sources to provide suitable applicants, but the Contractor shall not be required to hire those referred by the Union. The Contractor shall not be required to request the Union for applicants prior to hiring additional help.

(c) All present and future employees covered by this Agreement shall, as a condition of their continued employment by the Contractor, become and remain members in good standing in the Union, to the extent of paying or tendering an initiation fee and periodic dues uniformly required as a condition of membership in the Union, after the seventh (7th) day following the beginning of their employment with the Contractor or the effective date of this Agreement, whichever is later.

(d) In the event the National Labor Relations Act is amended, or construed, while this Agreement is in force, so that the employees covered by this Agreement may not lawfully be required to become members of the Union as a condition of employment after the seventh (7th) day of employment, then such longer period of time as shall be lawful shall immediately become operative under this Agreement, notwithstanding the provisions of (c) above.

(e) The failure of any person to make application to and become a member of the Union within said period of time shall obligate the Contractor who employs such person, upon written notice from the Union to any representative of management to such effect and to the further effect that Union membership was and is available to such person on

the same terms and conditions as available to other members of the Union or applicants for such membership, to forthwith discharge such person. The failure of any person to maintain his Union membership in good standing by his failure to pay the periodic dues of the Union shall upon written notice to the Contractor by the Union to such effect, obligate the Contractor to discharge such person.

(f) The Contractors agree to honor, upon presentation by the Union, all assignments for initiation fees, membership dues and uniform assessments which have been properly signed by an employee, to deduct the amount stated thereon from the wages earned by that employee and to pay the amount so deducted to the Local Union; provided, however, that this Section shall apply only to those assignments which are not irrevocable for more than one year or until this Agreement expires, whichever occurs sooner; and to those assignments which in addition provide that they shall automatically renew themselves for successive yearly or applicable contract periods thereafter, whichever is the lesser, and which further provide that the employee may revoke said assignment by giving written notice thereof to the Contractor and the Union at least sixty (60) days and not more than seventy-five (75) days before any periodic renewal date.

# A R T I C L E   I I I

## STEWARDS

The Contractor recognizes the right of the Union to designate job stewards and alternates. The authority of the job stewards and alternates, so designated by the Union, shall be limited to and shall not exceed the following duties and activities:

1. The investigation and presentation of grievances to the Contractor in accordance with the provisions of this Agreement.

2. The collection of dues, when authorized by appropriate Local Union action.

3. The transmission of such messages and information which shall originate with, and are authorized by, the Local Union, or its officers, provided such messages and information

   a. have been reduced to writing, or

   b. if not reduced to writing, are of a routine nature and do not involve work stoppages, slow-downs, refusal to handle goods, or any other interference with the Contractor's business.

The Contractor agrees to permit Union stewards to post and maintain Union notices on the premises when expressly authorized by an officer of the Union and approved by the Contractor.

Job stewards and alternates have no authority to take strike action or any other action interrupting the Contractor's business, except as authorized by official action of the Union.

The Contractor recognizes these limitations upon the authority of job stewards and alternates and shall not hold the Union liable for any unauthorized acts. The Contractor in so recognizing such limitation shall have the authority to impose proper discipline, including discharge without recourse, to any steward in the event such steward has taken unauthorized strike action, slow down or other work stoppage in violation of this Agreement.

All stewards shall be employees of the Contractor and shall perform the duties of the classification for which they are employed.

The job steward shall be selected from among the employees on the job site, and on any job site where employees covered under this Agreement are to be

employed for more than ten (10) days, the job steward shall be a member of the Local Union having jurisdiction over the area where the job site is situated; provided, however, that this provision shall not affect the right of the Contractor to determine the number of employees to be employed on the job site and the job steward retained where to do so would require the Contractor to displace an employee who has been employed by said Contractor for five (5) years or more.

# A R T I C L E   I V

## EXTRA CONTRACT AGREEMENTS

(a) The Contractor agrees not to enter into any agreement with another labor organization during the life of this Agreement with respect to the employees covered by this Agreement; or any agreement or contract with the said employees, individually or collectively, which in any way conflicts with the terms or provisions of this Agreement, or which in any way affects wages, hours or working conditions of said employees, or any individual employees. Any such agreement shall be null and void.

(b) In the event the Union enters into any agreement with any employer engaged in airport construction work (exclusive of buildings) or highway or bridge construction work within the State of Michigan, the terms and conditions (including wage rates) of which are more favorable to such employer than those contained in this Agreement, the Union agrees that such more favorable terms and conditions shall automatically be extended to the Contractors covered by this Agreement.

(c) This Agreement shall be binding upon the parties hereto, their successors, administrators and executors. The Contractor will give any successor notice of the existence of this Agreement.

# A R T I C L E   V

## MAJOR GRIEVANCE BOARD

(a) It is mutually agreed that all controversies and disagreements between the Contractors and employees covered by this Agreement and/or the Union as to the proper meaning or application of the terms of this Agreement shall be settled in accordance with the procedure herein provided, and that there shall at no time be any strikes, tie-ups of equipment, slow downs, walk-outs, or any cessation of work of any kind on the part of employees or the Union, nor shall the Contractors use any method of lock-out. Except as otherwise provided, the violation of payments of rates of pay, overtime work, Health and Welfare, Pension and/or Apprenticeship fund contributions, as provided in this Agreement, shall not be considered subject to arbitration, and the Union may take economic action against the Contractor for violation of such payments, provided it gives seventy-two (72) hours written or telegraphic notice to the Association and the Contractor concerned prior to taking such economic action.

(b) A Major Grievance Board shall be created consisting of two (2) representatives selected by the Contractors and two (2) representatives selected by the International Union involved. The Contractors and the Union shall have the right to select such alternates as may be required to assure their respective representation at any meetings of the Major Grievance Board. All four (4) members of the Board shall constitute a quorum and must be present at all hearings.

(c) It is mutually agreed that employees, the Union and the Contractors shall have the right and shall make every effort to adjust directly and with reasonable speed any and all grievances which may arise. If any such grievance is not satisfactorily settled by the Contractor, the employees shall within thirty (30) calendar days report the same to

the Union in writing, setting forth the time the grievance arose and the facts constituting such grievance, whereupon the Union shall present such complaint to the Contractor, and every effort shall be made to settle the same.

(d) If any grievance or disagreement is not satisfactorily settled, as provided above, then either the Union or the Contractor may submit the grievance to the Major Grievance Board provided, however, the grievance must be submitted in writing to the Board not later than thirty (30) calendar days from the date said grievance was filed in writing with the Union by the employee.

(e) The duty of the Major Grievance Board shall be to hear within fifteen (15) days, after presentation thereof by a designated representative of either the Contractor or the Union, all grievances and disputes that cannot be settled locally by the parties in dispute. Decisions of the Board shall be reached by a majority of the Board and shall be binding upon the Contractor, the Union or otherwise any employee or employees involved. Unless otherwise agreed to between the Contractor and the Union, the Major Grievance Board must meet within the fifteen (15) day period hereinabove specified.

In the event the Contractor refuses or fails to meet with the Union representatives or fails to adjust a grievance within the fifteen (15) day Major Grievance Board within (or such other time as the parties mutually agree upon), the Union shall have the right to strike, notwithstanding any provision of this Agreement to the contrary. Any grievance or dispute not processed by an employee or the Union within the time limits hereinabove provided shall be deemed withdrawn.

(f) If the Major Grievance Board cannot settle or adjust a grievance or dispute, the matter shall be submitted to a disinterested arbitrator who shall be selected by and be acceptable to both

parties to this Agreement. In the event the Board is unable to mutually agree upon an arbitrator within five (5) days from the date of reaching an impasse on a grievance or dispute, then the arbitrator shall be selected according to the rules and procedure of the American Arbitration Association. The arbitrator's fee shall be shared equally by the Contractor and the Union.

(g) The arbitrator shall confine his decision to the dispute in question, and he shall have no authority to add to, subtract from, or in any way modify the terms of this Agreement. The arbitrator's decision shall be final and binding upon the Contractor, the Union and the employee or employees involved.

(h) It is mutually agreed that the provision of this Article shall not apply if the dispute arises over failure or refusal of a Contractor to pay wage rates, overtime, Health and Welfare, Pension and/or Apprenticeship contracts provided for in this Agreement; provided, however, that any dispute involving particular employee's proper wage rate, classification or eligibility to receive overtime pay shall be subject to the provisions of this Article. Wage and overtime claims will be considered only for the thirty (30) day period prior to the filing of a grievance, in writing, by the employee.

(i) The duly authorized Union representative carrying proper credentials shall be allowed to visit jobs during working hours to interview the Contractor, steward or men working, but shall in no way hinder the progress of the work.

# ARTICLE VI

## PROTECTION OF RIGHTS

(a) PICKET LINE - It shall not be a violation of this Agreement, and it shall not be a cause for discharge or disciplinary action, in the event an employee refuses to enter upon any property involved in a primary labor dispute or refuses to go through any primary picket line, including the primary picket line of Unions party to this Agreement and including primary picket lines at the employer's place of business.

(b) STRUCK GOODS - It shall not be a violation of this Agreement and it shall not be a cause for discharge or disciplinary action if any employee refuses to perform any service which his employer undertakes to perform for an employer or person whose employees are on strike and which service, but for such strike, would be performed by the employees of the employer or person on strike.

(c) Subject to Article XV (Subcontracting), the Contractor agrees that it will not cease or refrain from handling, using, transporting or otherwise dealing in any of the products of any other employer or cease doing business with any other person, or fail in any obligation imposed by applicable law, as a result of individual employees exercising their rights under this Agreement or under law but the Contractor shall, notwithstanding any other provision in this Agreement, when necessary, continue doing such business by other employees.

(d) GRIEVANCES - Within five (5) working days of the filing of a grievance claiming a violation of this Article, the parties to this Agreement shall proceed to the final step of the grievance procedure, without taking any intermediate steps, any other provision of this Agreement to the contrary notwithstanding.

# ARTICLE VII

## NOTIFICATION

The Local Union must be informed as to the starting date of a new job, and the Contractors agrees to notify the Local Union as to the day work is scheduled to commence such notification to be given in writing at least three (3) days prior to the scheduled starting time. Prior to commencing such work the Union shall be given equal opportunity with all other sources to provide suitable applicants for employment. The Contractor retains the right to reject any and all applicants.

# ARTICLE VIII

## ZONES

(a) The following wage rates shall apply to all workmen on all work covered by this Agreement. The wage rates upon the effective dates shall apply on all work in the geographical Zones, as follows:

Zone 1 is defined as including the following counties within the State of Michigan: Wayne, Monroe, Washtenaw, Oakland, Macomb, Genesee, Saginaw and Livingston.

Zone 2 is defined as including all of the remaining counties in the State of Michigan in both the upper and lower peninsulas.

## WAGE RATES ON PREVAILING WAGE WORK

(b) The following job classifications and rates of wages shall apply to all work and every workman covered by this Agreement when working on projects which are subject to prevailing wage rate determination under any Federal, State, County or Local Governmental law, rule or regulation. The wage rates upon the effective dates shall apply on all work, both old and new, in the geographical Zones, as follows:

CEMENT MASON -- Wage Rates on Prevailing Wage Work

Effective June 6, 1983

|  | Zone 1 | Zone 2 |
|---|---|---|
| Base Rate Per Hour | $15.47 | $14.82 |
| Pension (Funded) | 1.00 | 1.00 |
| Health & Welfare (Funded) | 1.10 | 1.10 |
| Apprentice (Funded) | .02 | .02 |
|  | $17.59 | $16.94 |
| Industry Promotion Fund | .05 | .05 |
| TOTAL | $17.64 | $16.99 |

Effective June 1, 1984

|  | Zone 1 | Zone 2 |
|---|---|---|
| Base Rate Per Hour | $15.94 | $15.26 |
| Pension (Funded) | 1.00 | 1.00 |
| Health & Welfare (Funded) | 1.10 | 1.10 |
| Apprentice (Funded) | .02 | .02 |
|  | $18.06 | $17.38 |
| Industry Promotion Fund | .05 | .05 |
| TOTAL | $18.11 | $17.43 |

Effective June 1, 1985

|  | Zone 1 | Zone 2 |
|---|---|---|
| Base Rate Per Hour | $16.42 | $15.72 |
| Pension (Funded) | 1.00 | 1.00 |
| Health & Welfare (Funded) | 1.10 | 1.10 |
| Apprentice (Funded) | .02 | .02 |
|  | $18.54 | $17.84 |
| Industry Promotion Fund | .05 | .05 |
| TOTAL | $18.59 | $17.89 |

APPRENTICE -- 1st Year Man - Wage Rates on Prevailing Wage Work

Effective June 6, 1983

|  | Zone 1 | Zone 2 |
|---|---|---|
| Base Rate Per Hour | $ 7.74 | $ 7.41 |
| Pension (Funded) | 1.00 | 1.00 |
| Health & Welfare (Funded) | 1.10 | 1.10 |
| Apprentice (Funded) | .02 | .02 |
|  | $ 9.86 | $ 9.53 |
| Industry Promotion Fund | .05 | .05 |
| TOTAL | $ 9.91 | $ 9.58 |

Effective June 1, 1984

|  | Zone 1 | Zone 2 |
|---|---|---|
| Base Rate Per Hour | $ 7.97 | $ 7.63 |
| Pension (Funded) | 1.00 | 1.00 |
| Health & Welfare (Funded) | 1.10 | 1.10 |
| Apprentice (Funded) | .02 | .02 |
|  | $10.09 | $ 9.75 |
| Industry Promotion Fund | .05 | .05 |
| TOTAL | $10.14 | $ 9.80 |

Effective June 1, 1985

|  | Zone 1 | Zone 2 |
|---|---|---|
| Base Rate Per Hour | $ 8.21 | $ 7.86 |
| Pension (Funded) | 1.00 | 1.00 |
| Health & Welfare (Funded) | 1.10 | 1.10 |
| Apprentice (Funded) | .02 | .02 |
|  | $10.33 | $ 9.98 |
| Industry Promotion Fund | .05 | .05 |
| TOTAL | $10.38 | $10.05 |

APPRENTICE -- 2nd Year Man - Wage Rates on Prevailing Wage Work

Effective June 6, 1983

|                           | Zone 1  | Zone 2  |
|---------------------------|---------|---------|
| Base Rate Per Hour        | $10.83  | $10.37  |
| Pension (Funded)          | 1.00    | 1.00    |
| Health & Welfare (Funded) | 1.10    | 1.10    |
| Apprentice (Funded)       | .02     | .02     |
|                           | $12.95  | $12.49  |
| Industry Promotion Fund   | .05     | .05     |
| TOTAL                     | $13.00  | $12.54  |

Effective June 1, 1984

|                           | Zone 1  | Zone 2  |
|---------------------------|---------|---------|
| Base Rate Per Hour        | $11.16  | $10.68  |
| Pension (Funded)          | 1.00    | 1.00    |
| Health & Welfare (Funded) | 1.10    | 1.10    |
| Apprentice (Funded)       | .02     | .02     |
|                           | $13.28  | $12.80  |
| Industry Promotion Fund   | .05     | .05     |
| TOTAL                     | $13.33  | $12.85  |

Effective June 1, 1985

|                           | Zone 1  | Zone 2  |
|---------------------------|---------|---------|
| Base Rate Per Hour        | $11.49  | $11.00  |
| Pension (Funded)          | 1.00    | 1.00    |
| Health & Welfare (Funded) | 1.10    | 1.10    |
| Apprentice (Funded)       | .02     | .02     |
|                           | $13.61  | $13.12  |
| Industry Promotion Fund   | .05     | .05     |
| TOTAL                     | $13.66  | $13.17  |

APPRENTICE -- 3rd Year Man - Wage Rates on Prevailing Wage Work

Effective June 6, 1983

|                           | Zone 1  | Zone 2  |
|---------------------------|---------|---------|
| Base Rate Per Hour        | $13.92  | $13.34  |
| Pension (Funded)          | 1.00    | 1.00    |
| Health & Welfare (Funded) | 1.10    | 1.10    |
| Apprentice (Funded)       | .02     | .02     |
|                           | $16.04  | $15.46  |
| Industry Promotion Fund   | .05     | .05     |
| TOTAL                     | $16.09  | $15.51  |

Effective June 1, 1984

|                           | Zone 1  | Zone 2  |
|---------------------------|---------|---------|
| Base Rate Per Hour        | $14.35  | $13.73  |
| Pension (Funded)          | 1.00    | 1.00    |
| Health & Welfare (Funded) | 1.10    | 1.10    |
| Apprentice (Funded)       | .02     | .02     |
|                           | $16.47  | $15.85  |
| Industry Promotion Fund   | .05     | .05     |
| TOTAL                     | $16.52  | $15.90  |

Effective June 1, 1985

|                           | Zone 1  | Zone 2  |
|---------------------------|---------|---------|
| Base Rate Per Hour        | $14.78  | $14.15  |
| Pension (Funded)          | 1.00    | 1.00    |
| Health & Welfare (Funded) | 1.10    | 1.10    |
| Apprentice (Funded)       | .02     | .02     |
|                           | $16.90  | $16.27  |
| Industry Promotion Fund   | .05     | .05     |
| TOTAL                     | $16.95  | $16.32  |

# WAGE RATES ON NON-PREVAILING WAGE WORK

(c) The following job classifications and rates of wages shall apply to all work and every worker covered by this Agreement when working on projects not subject to prevailing wage rate determination under any Federal, State, County or Local Governmental law, rule or regulation. The wage rates upon the effective dates shall apply on all work in the geographical Zones as follows:

CEMENT MASON - Wage Rates on Non-Prevailing Wage Work

Effective June 6, 1983

|  | Zone 1 | Zone 2 |
|---|---|---|
| Base Rate Per Hour | $13.92 | $11.86 |
| Pension (Funded) | 1.00 | 1.00 |
| Health & Welfare (Funded) | 1.10 | 1.10 |
| Apprentice (Funded) | .02 | .02 |
|  | $16.04 | $13.98 |
| Industry Promotion Fund | .05 | .05 |
| TOTAL | $16.09 | $14.03 |

Effective June 1, 1984

|  | Zone 1 | Zone 2 |
|---|---|---|
| Base Rate Per Hour | $14.35 | $12.21 |
| Pension (Funded) | 1.00 | 1.00 |
| Health & Welfare (Funded) | 1.10 | 1.10 |
| Apprentice (Funded) | .02 | .02 |
|  | $16.47 | $14.33 |
| Industry Promotion Fund | .05 | .05 |
| TOTAL | $16.52 | $14.38 |

CEMENT MASON - (cont.)

Effective June 1, 1985

|  | Zone 1 | Zone 2 |
|---|---|---|
| Base Rate Per Hour | $14.78 | $12.58 |
| Pension (Funded) | 1.00 | 1.00 |
| Health & Welfare (Funded) | 1.10 | 1.10 |
| Apprentice (Funded) | .02 | .02 |
|  | $16.90 | $14.70 |
| Industry Promotion Fund | .05 | .05 |
| TOTAL | $16.95 | $14.75 |

APPRENTICE -- 1st Year Man - Wage Rates on Non-Prevailing Wage Work

Effective June 6, 1983

|  | Zone 1 | Zone 2 |
|---|---|---|
| Base Rate Per Hour | $ 6.96 | $ 5.93 |
| Pension (Funded) | 1.00 | 1.00 |
| Health & Welfare (Funded) | 1.10 | 1.10 |
| Apprentice (Funded) | .02 | .02 |
|  | $ 9.08 | $ 8.05 |
| Industry Promotion Fund | .05 | .05 |
| TOTAL | $ 9.13 | $ 8.10 |

Effective June 1, 1984

|  | Zone 1 | Zone 2 |
|---|---|---|
| Base Rate Per Hour | $ 7.17 | $ 6.10 |
| Pension (Funded) | 1.00 | 1.00 |
| Health & Welfare (Funded) | 1.10 | 1.10 |
| Apprentice (Funded) | .02 | .02 |
|  | $ 9.29 | $ 8.22 |
| Industry Promotion Fund | .05 | .05 |
| TOTAL | $ 9.34 | $ 8.27 |

## APPRENTICE -- 1st Year Man - (cont.)

### Effective June 1, 1985

|                           | Zone 1  | Zone 2  |
|---------------------------|---------|---------|
| Base Rate Per Hour        | $ 7.39  | $ 6.29  |
| Pension (Funded)          | 1.00    | 1.00    |
| Health & Welfare (Funded) | 1.10    | 1.10    |
| Apprentice (Funded)       | .02     | .02     |
|                           | $ 9.51  | $ 8.41  |
| Industry Promotion Fund   | .05     | .05     |
| TOTAL                     | $ 9.56  | $ 8.46  |

## APPRENTICE -- 2nd Year Man - Wage Rates on Non-Prevailing Wage Work

### Effective June 6, 1983

|                           | Zone 1  | Zone 2  |
|---------------------------|---------|---------|
| Base Rate Per Hour        | $ 9.75  | $ 8.30  |
| Pension (Funded)          | 1.00    | 1.00    |
| Health & Welfare (Funded) | 1.10    | 1.10    |
| Apprentice (Funded)       | .02     | .02     |
|                           | $11.87  | $10.42  |
| Industry Promotion Fund   | .05     | .05     |
| TOTAL                     | $11.92  | $10.47  |

### Effective June 1, 1984

|                           | Zone 1  | Zone 2  |
|---------------------------|---------|---------|
| Base Rate Per Hour        | $10.04  | $ 8.54  |
| Pension (Funded)          | 1.00    | 1.00    |
| Health & Welfare (Funded) | 1.10    | 1.10    |
| Apprentice (Funded)       | .02     | .02     |
|                           | $12.16  | $10.66  |
| Industry Promotion Fund   | .05     | .05     |
| TOTAL                     | $12.21  | $10.71  |

## APPRENTICE -- 2nd Year Man - (cont.)

### Effective June 1, 1985

|                           | Zone 1  | Zone 2  |
|---------------------------|---------|---------|
| Base Rate Per Hour        | $10.34  | $ 8.80  |
| Pension (Funded)          | 1.00    | 1.00    |
| Health & Welfare (Funded) | 1.10    | 1.10    |
| Apprentice (Funded)       | .02     | .02     |
|                           | $12.46  | $10.92  |
| Industry Promotion Fund   | .05     | .05     |
| TOTAL                     | $12.51  | $10.97  |

## APPRENTICE -- 3rd Year Man - Wage Rates on Non-Prevailing Wage Work

### Effective June 6, 1983

|                           | Zone 1  | Zone 2  |
|---------------------------|---------|---------|
| Base Rate Per Hour        | $12.53  | $10.67  |
| Pension (Funded)          | 1.00    | 1.00    |
| Health & Welfare (Funded) | 1.10    | 1.10    |
| Apprentice (Funded)       | .02     | .02     |
|                           | $14.65  | $12.79  |
| Industry Promotion Fund   | .05     | .05     |
| TOTAL                     | $14.70  | $12.84  |

### Effective June 1, 1984

|                           | Zone 1  | Zone 2  |
|---------------------------|---------|---------|
| Base Rate Per Hour        | $12.92  | $10.99  |
| Pension (Funded)          | 1.00    | 1.00    |
| Health & Welfare (Funded) | 1.10    | 1.10    |
| Apprentice (Funded)       | .02     | .02     |
|                           | $15.04  | $13.11  |
| Industry Promotion Fund   | .05     | .05     |
| TOTAL                     | $15.09  | $13.16  |

APPRENTICE -- 3rd Year Man -- (cont.)

Effective June 1, 1985

| | Zone 1 | Zone 2 |
|---|---|---|
| Base Rate Per Hour | $13.30 | $11.32 |
| Pension (Funded) | 1.00 | 1.00 |
| Health & Welfare (Funded) | 1.10 | 1.10 |
| Apprentice (Funded) | 1.02 | .02 |
| TOTAL | $15.42 | $13.44 |
| Industry Promotion Fund | .05 | .05 |
| TOTAL | $15.47 | $13.49 |

(d) Upon written agreement between the LRD and the Union(s), the Union(s) may divert a part of the base wage rate provided in this Agreement to fund Health and Welfare payments or Pension payments. The written agreement between the LRD and the Union(s) shall state the amount, or amounts, to be diverted from the base wage rates and the effective date. Contractors shall thereafter make the appropriate contribution(s) to the fund(s), and the base wage rate shall be reduced accordingly.

VACATION FUND

(e) If the Union establishes a Vacation Fund and an employee working under this Agreement desires to have contributions made to such Vacation Fund on his behalf, the Contractor will, upon written authorization from the employee, make contributions to such Vacation Fund by deducting the amount of such contribution from the wages earned by the employee. Such written authorization from the employee shall continue in effect for one (1) year from the date delivered to the Contractor and shall continue in effect from year to year thereafter unless revoked by the employee, in writing, delivered to the Contractor at least thirty (30) days before the yearly anniversary date of such authorization.

(f) In the event there is a construction contract extending into two Zones, the rate of pay for the entire construction contract shall be that of the Zone commanding the higher wage scale.

PAY PROVISIONS

(g) All wages shall be paid to the employees at least once a week on the job site. The weekly pay day established by the Contractor for a particular job site shall remain the same for the life of the job. Employees shall be paid in United States currency or check drawn on a Michigan bank. The Contractor agrees that Payroll checks will be on the start job site no later than two (2) hours after the start of the shift on pay day so that employees may receive their checks before leaving the job site when they are not required to start work; provided, however, mutually agreed to arrangements for obtaining payroll checks may be made between an employee and a Contractor. If the regular pay day falls on a holiday, the employees will be paid the day before the holiday.

DISCHARGE

(h) If a workman is discharged or permanently laid off from the job site, he shall be paid within one (1) hour of the time of discharge or he shall be paid straight-time for any time he is required to wait beyond such one (1) hour. This shall be construed to apply to normal working hours only.

VOLUNTARY QUIT

(i) If a workman quits of his own accord, he shall wait his pay until the next regular pay day. If the workman does not reside in the area of the job, his check shall be mailed to his home address.

LEADMAN

(j) Whenever five (5) or more Cement Masons are working for a Contractor on a job site, the Contractor shall designate one of such workmen (who

shall be a journeyman Cement Mason) to act as Leadman. When working as a Leadman, the workman shall receive fifty cents (50¢) per hour above the Cement Mason rate. A Leadman shall perform the work of a journeyman Cement Mason.

## SHIFT WORK

(k) On jobs where only one (1) shift is worked but it is necessary to commence work at 4:00 p.m. or later, all employees who commence work between the hours of 4:00 p.m. and 4:30 a.m. shall receive a premium of ten cents (10¢) per hour in addition to their regular straight-time hourly rate. If the shift commences prior to 12:00 midnight on Friday and continues into Saturday, time and one-half (1 1/2) shall not be paid until eight (8) hours have been worked after the starting time of the shift. If the shift commences at or after 8:00 p.m. on Sunday night, time and one-half (1 1/2) shall not be paid until eight (8) hours have been worked after the starting time of the shift. When it is necessary to change the starting time of the shift on a job site due to requirements of the contracting authority, the Contractor shall notify the Local Union.

## ARTICLE IX

## HEALTH AND WELFARE FUND

(a) Effective June 6, 1983, the Contractors agree to pay into the Michigan Trowel Trades Health and Welfare Fund one dollar and ten cents ($1.10) per hour worked (d) hours for each employee doing work covered by this Agreement. All Health and Welfare contributions shall be computed on actual hours worked, without regard to whether the employee was working on straight-time or overtime. These contributions shall be deposited each month, or at such other regular intervals as may be determined by the Trustees of the Michigan Trowel Trades Health and Welfare Fund, to such depository as may be designated by said Trustees.

The Contractors agree to be bound by the terms

[22]

of the Michigan Trowel Trades Health and Welfare Fund Trust Agreement and by lawful rules and regulations adopted by the Trustees pursuant thereto.

## PENSION FUND

(b) Effective June 6, 1983, the Contractors agree to pay into the Outstate Michigan Trowel Trades Pension Fund one dollar ($1.00) per hour for each hour actually worked by each employee doing work covered by this Agreement, without regard to whether the employee was working on straight-time or overtime. The contributions to the Pension Fund shall be made by each Contractor each month, or at such other regular intervals as may be determined by the Trustees of the Pension Fund, to such depository as may be designated by said Trustees.

The Contractors agree to be bound by the terms and conditions of the Trust Agreement establishing the Michigan Outstate Trowel Trades Pension Fund and by all lawful rules and regulations adopted by the Trustees pursuant thereto.

## ARTICLE X

## APPRENTICESHIP FUND

(a) Effective June 6, 1983, the Contractors agree to pay into the Operative Plasterers' and Cement Masons' Apprenticeship Fund two cents (2¢) per hour for each hour worked by each Cement Mason working under this Agreement. This contribution shall be computed on actual hours worked without regard to whether the employee was working on straight-time or overtime. These contributions shall be deposited each month, or at such other regular intervals as may be determined by the Trustees of the Operative Plasterers' and Cement Masons' Apprenticeship Fund, to such depository as may be designated by said Trustees.

(b) The Contractors agree to be bound by the terms and conditions of the Trust Agreement estab-

[23]

lishing said Operative Plasterers' and Cement Masons' Apprenticeship Fund and by all lawful rules and regulations adopted by the Trustees pursuant thereto.

# A R T I C L E   X I

## INDUSTRY PROMOTION FUND

(a) The Contractors agree to pay to the Michigan Road Builders Association Industry Promotion Fund the sum of five cents (5¢) per hour for all hours paid each employee working under this Agreement, without regard to whether the employee was working on straight-time or overtime.

(b) The contributions to the Industry Promotion fund shall be deposited each month, or at such other regular intervals as may be determined by the Association, to the depository designated by the Association and such contributions shall be reported on such form as may be designated by the Association.

(c) The activities of the Industry Promotion Fund shall be determined by the Association and shall be financed from the payments herein provided for.

(d) The Contractors hereby agree that the designated representative of the Association shall be permitted, upon request, to audit the payroll records of the Contractor to determine compliance with this Article.

# A R T I C L E   X I I

## OVERTIME

(a) Employees shall receive time and one-half (1 1/2) the regular established rate per hour for

[24]

all work performed in excess of eight hours per day, except where the Contractor schedules work on a four ten-hour day work schedule (see paragraph f).

## SATURDAYS-SUNDAYS-HOLIDAYS

(b) Employees shall receive time and one-half (1 1/2) the regular established rate per hour for all work performed on Saturdays, Sundays and the following holidays, except as otherwise provided in paragraph (i) of Article VIII: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas Day. No work shall be performed on Labor Day except in extreme emergencies.

## SHOW-UP TIME

(c) In the event an employee is ordered to report for work on any day, he shall be paid at least two (2) hours pay if he is not put to work, unless he is prevented from working on account of bad weather. If the employee works more than four (4) hours, he shall receive eight (8) hours pay, unless he is prevented from working on account of bad weather or by other conditions beyond the control of the Contractor. If he commences work, he shall receive four (4) hours pay unless he is prevented from working on account of bad weather or by other conditions beyond the control of the Contractor.

(d) Eight (8) hours shall constitute a work day; provided, however, that where a work shifts are worked employees on the second and third shifts shall be allowed a one-half (1/2) hour lunch period in each shift to be paid for as working time.

(e) A normal work week shall constitute five (5) days commencing Monday A.M. through Friday P.M.

## FOUR TEN-HOUR DAY WORK SCHEDULE

(f) The Contractor shall have the option of scheduling work on the basis of four (4) ten (10)

[25]

hour days, Monday through Friday, at straight-time, on any job except where Davis-Bacon or other governmental regulations requires the payment of time and one-half (1 1/2) for over eight (8) hours in a day. The four (4) ten (10) hour days shall be scheduled on a weekly basis. On any job where the Contractor intends to work four (4) ten (10) hour days the Contractor will hold a pre-job conference with the Union(s) to inform the Union(s) of the work schedule for the job.

## A R T I C L E   X I I I

### LIABILITY OF PARTIES

(a) The Contractor agrees that it will not hold the Union liable for any acts of its members not authorized by said Union. The Union agrees that it will, on written request of the Contractor, notify the Contractor after receipt of said request whether the act of the member or members of the Union so complained of was or was not authorized, and if not authorized, the Union agrees that it will take immediate steps to rectify the situation complained of.

(b) The Union agrees that it will not hold the Contractor liable for any acts of the agents of said Contractor not authorized by said Contractor. The Contractor agrees that it will, on written request by the Union, notify the Union in writing within twenty-four (24) hours after receipt of said request at the office of said Contractor whether or not the act of the Contractor's agent so complained of by the Union was authorized, and if not authorized, the Contractor agrees that it will take immediate steps to rectify the situation complained of.

[26]

## A R T I C L E   X I V

### GENERAL PROVISIONS

(a) The Union agrees that the Contractor shall not be hindered or prevented from using any type or quantity of tools or appliances and may secure materials or equipment from any market or source without interference of any kind.

(b) The terms and conditions of this Agreement shall be equally applicable to all employes without regard to race, creed, color, ancestry or national origin.

(c) The Contractor and the Union acknowledge that they are subject to applicable laws regarding equal employment opportunity and fair employment practices and agree that they shall cooperate in taking necessary steps to comply with such laws and lawful regulations thereunder. Referral and selection of all employees shall be on the basis of qualifications, without regard to race, creed, color, sex, age, religion, national origin or ancestry.

(d) The Contractor shall not be required to take any action under this Agreement which is in violation of Federal, State or local laws.

(e) Nothing in this Agreement shall prevent any workman employed by the Contractor from moving from one area to another and working in the latter area. When the Contractor needs additional help, he will give the Local Union having jurisdiction over the job equal opportunity with all other sources to supply additional workmen. The Contractor shall have the right to reject any and all applicants.

(f) Under no circumstances will a workman be required or assigned to engage in any activity in

[27]

violation of any applicable statute, or court order, or government regulation relating to safety of person or equipment.

(g) The Contractor will, when sanitary facilities are not otherwise available, provide temporary sanitary accommodations for the use of his employees.

(h) Any workman temporarily shifted by the Contractor from one classification of work to another classification of work shall be paid the rate or wages for the classification which provides the higher wage rate.

(i) It shall be considered a violation of this Agreement for the Contractor to deduct any money from the employee's pay except deductions required by Federal or State Laws, court order or written authorization of the workman.

(j) Due to agreements between the International Union, Bricklayers and Allied Craftsmen, and the Operative Plasterers' and Cement Masons' International Association over jurisdictional territorial boundaries, and as this Agreement is joint, no differentials in wage rates or working conditions shall be provided. The Contractors shall be free to move employees represented by the Operative Plasterers' and Cement Masons' International Association or by the International Union, Bricklayers and Allied Craftsmen, from one to any construction project in the State of Michigan.

## A R T I C L E   X V

### PARTIES TO THIS AGREEMENT

(a) This Agreement shall include all members of the Labor Relations Division of the Michigan Road Builders Association who designate the Labor Rela-

tions Division as their bargaining agent for purposes of bargaining with the Operative Plasterers' and Cement Masons' International Association of the United States and Canada, and the International Union, Bricklayers and Allied Craftsmen and all Local Unions having jurisdiction over the work covered by this Agreement and affiliated with either the Operative Plasterers' and Cement Masons' International Association of the United States and Canada or the International Union, Bricklayers and Allied Craftsmen.

(b) The terms of this Agreement shall become effective and binding on all Contractors who may request and receive membership in the Labor Relations Division of the Michigan Road Builders Association and who designate the Labor Relations Division as their bargaining agent for purposes of bargaining with the Operative Plasterers' and Cement Masons' International Association of the United States and Canada, and the International Union, Bricklayers and Allied Craftsmen, and all Local Unions having jurisdiction over the work covered by this Agreement.

## A R T I C L E   X V I

### SUBCONTRACTING

The wages, hours and working conditions provided by this Agreement shall apply to all work performed by the Contractor with his own employees and to all work performed by workmen on the job site by piece work, station work or in the employment of subcontractors. The Contractor agrees to refrain from subcontracting work covered by this Agreement to any person who does not agree to observe the wages, hours and working conditions established by this Agreement.

**A R T I C L E   X V I I**

MILITARY CLAUSE

Workmen enlisting or entering the military or naval service of the United States, pursuant to the Selective Service Act of 1948, as amended, shall be granted all rights and privileges by this Act.

**A R T I C L E   X V I I I**

WORKERS' COMPENSATION

The Contractor agrees to cooperate toward the prompt settlement of employee on-the-job injury and sickness claims. When such claims are due and owing, the Contractor shall provide workers' compensation for all employees covered by this Agreement even though not required by State law.

**A R T I C L E   X I X**

LIMITATIONS OF AUTHORITY AND LIABILITY

(a) No employee, Union member, or other agent of the Union shall be empowered to call or cause any strike, work stoppage or cessation of employment of any kind whatsoever without the express approval of the International Union involved. The Union shall not be liable for any such activities unless expressly authorized.

(b) The authority of the Union stewards shall be limited to acts or functions which said stewards are expressly authorized to perform by the Local Union of which they are a member.

**A R T I C L E   X X**

SEPARABILITY AND SAVINGS CLAUSE

If any article or section of this Agreement or any riders thereto should be held invalid by operation of law or by any tribunal of competent jurisdiction or if compliance with or enforcement of any article or section should be restrained by such tribunal pending a final determination as to its validity, the remainder of this Agreement and of any rider thereto, or the application of such article or section to persons or circumstances other than those as to which it has been held invalid or as to which compliance with or enforcement of has been restrained, shall not be affected thereby.

In the event that any article or section is held invalid or enforcement or compliance with which has been restrained, as above set forth, the parties affected thereby shall enter into immediate collective bargaining negotiations, upon the request of either party, for the purpose of arriving at a mutually satisfactory replacement for such article or section during the period of invalidity or restraint. If the parties do not agree on a mutually satisfactory replacement, either party shall be permitted all legal or economic recourse in support of its demands notwithstanding any provision in this Agreement to the contrary.

**A R T I C L E   X X I**

APPRENTICES

(a) In order to maintain a sufficient number of skilled Journeymen Cement Masons in the industry covered by this Agreement, the necessity for the employment of apprentices is recognized and the training and employment of as many Apprentices as is reasonable and practicable shall be encouraged and undertaken by both the Union and the Contractors.

(b) On highway and airport construction the Contractors shall not be required to use Apprentices. However, where three or more Journeymen Cement Masons are employed by the Contractor one Apprentice shall be permitted; five or more, two shall be permitted; seven or more, three shall be permitted; ten or more, four shall be permitted.

(c) On bridge construction work the Contractor shall not be required to use Apprentices. However, an Apprentice shall be permitted for each Journeyman Cement Mason employed by the Contractor; provided, however, that when the Contractor is unable to secure sufficient Journeymen Cement Masons, then he may employ an Apprentice, or Apprentices, in their stead.

ON-THE-JOB TRAINEES

(d) Whenever the Contractor hires on-the-job trainees to perform work within the jurisdiction of the Union and covered under this Agreement, such trainees shall receive the rate of pay provided for on-the-job trainees by applicable governmental regulation and such on-the-job trainees shall be required to become members of the Union as provided in Article II of this Agreement.

# ARTICLE XXII

TERMINATION

This Agreement shall remain in full force and effect until June 1, 1986, and thereafter shall continue in force from year to year, unless either party hereto shall notify the other party in writing at least sixty (60) days prior to the end of the current term, or as the case may be sixty (60) days prior to the end of any additional contract year, of its intention to make changes in or terminate this Agreement. Such written notice shall specify any changes or amendments desired by the party giving such notice and shall be sent by registered or

certified mail to the other party. The parties shall then enter into collective bargaining not later than forty-five (45) days prior to the Agreement expiration date.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

LABOR RELATIONS DIVISION OF THE MICHIGAN ROAD BUILDERS ASSOCIATION

By: _Bart O. Carrigan_
Bart O. Carrigan
Secretary

OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION OF THE UNITED STATES AND CANADA

By: _Donald B. Johnston_
Donald B. Johnston
Vice President

INTERNATIONAL UNION, BRICKLAYERS AND ALLIED CRAFTSMEN

By: _George Spencer_
George Spencer
Special Deputy

# A P P E N D I X

The following is an extract from the Constitution of the Operative Plasterers' and Cement Masons' International Association of the United States and Canada, and the International Union, Bricklayers and Allied Craftsmen respectively, with respect to their claimed jurisdiction.

## OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION OF THE UNITED STATES AND CANADA

All concrete construction such as bridges, silos, curbs and gutters, sidewalks, streets and roads, paving, alleys and roofs of mass and reinforced concrete slabs and all flat surfaces of cement, rock asphalt, the laying and spreading and finishing of all types if bituminous concrete including all types of asphalt floors and pavements and the operation of power driven floats and troweling machines. The rodding, spreading and tamping of all concrete and the spreading and finishing of all top materials, all preparatory work on concrete construction to be finished or rubbed, such as cutting of nails, wires, wall ties, etc., patching, brushing, chipping, bush-hammering, rubbing or grinding if done by machine or carborundum stone or of all concrete construction, setting of all strips, screeds, stakes and grades and curb forms. All prefabricated and prestressed concrete construction on the job site and in the shop such as sidewalks, steps, floor slabs, beams, joists, walls and columns, also the screeding, finishing, rubbing, grouting, pointing and patching of same.

The curing of finished concrete, wherever necessary, whether by chemical compounds or otherwise, shall be part of the jurisdiction of the Cement Mason.

(6/83)

[34]

## INTERNATIONAL UNION, BRICKLAYERS AND ALLIED CRAFTSMEN

CEMENT MASONRY - Laying out, screeding and finishing of all cement, concrete, brownstone composition, mastic and gypsum materials, also for fireproofing, waterproofing, cement and composition base and vault lights. The cutting of all cement and concrete for patching and finishing. The bush-hammering of all concrete when cast in place. The operation of the cement gun, the nozzle and the finishing of all material applied by the guns, also the operation of the cement floor finishing machines.

(6/83)

[35]

OPERATIVE PLASTERERS' AND CEMENT MASONS'
LOCAL UNION'S JURISDICTION
FOR CEMENT MASONS

LOCAL NO. 16 - Kalamazoo-Battle Creek; (616) 962-6728
Kalamazoo, Calhoun, Barry, the eastern and southeastern portion of Allegan, and the eastern half of Van Buren.

LOCAL NO. 198 - Flint; (313) 785-2911
Shiawassee, Genesee, and the northern half of Livingston, including the city of Howell.

LOCAL NO. 500 - Lansing-Jackson; (517) 882-3931
Ingham, Jackson, Clinton and Eaton.

LOCAL NO. 514 - Detroit; (313) 931-4200
Wayne and those portions of Oakland and Macomb to Thirteen Mile Road, Monroe except that portion south of County Road #151.

LOCAL NO. 546 - Grand Rapids-Muskegon; (616) 243-3170
Kent, Muskegon, Oceana, Newaygo, Montcalm, Ionia and that portion of Ottawa north of Highway M-45.

LOCAL NO. 886 - Toledo; (491) 478-2652
That portion of Monroe south of County Highway #151.

LOCAL NO. 40 - Gaylord; (616) 369-2736
All of Crawford, Roscommon, Clare, Wexford, Osceola, Missaukee, Antrim, Grand Traverse, Leelanau, Kalkaska, Alpena, Alcona, Oscoda, Montmorency, Charlevoix, Cheboygan, Emmett, Otsego Manistee and Benzie Counties also Presque Isle.

CONTRACT TO BE EXECUTED BETWEEN AN EMPLOYER
WHO IS NOT A MEMBER OF THE SIGNATORY GROUP
COVERED BY THIS AGREEMENT

and the

OPERATIVE PLASTERERS' AND CEMENT MASONS' INTER-
NATIONAL ASSOCIATION OF THE UNITED STATES
AND CANADA
and the
INTERNATIONAL UNION, BRICKLAYERS
AND ALLIED CRAFTSMEN

Firm Name _____

Address _____

Michigan Employment Security Commission Registra-
tion:

Number _____

Expires _____

Workers' Compensation Insurance:

Number _____

Expires _____

Insurance Firm _____

We, the undersigned, have read and hereby agree to
be bound by all the terms and conditions set forth
in the foregoing Agreement.

Signed this _____ day of _____, 19____.

Firm Name: _____

By: _____

Title: _____

LOCAL UNION # _____

By: _____

Title: _____

Received Time Apr.15. 9:43AM

AKA L-SQUARED

LACARIA COAST

**1983-1986 AGREEMENT**

between the

**LABOR RELATIONS DIVISION**

of the

**MICHIGAN ROAD BUILDERS ASSOCIATION**

and the

**OPERATIVE PLASTERERS' AND CEMENT MASONS' INTERNATIONAL ASSOCIATION**

of the

**UNITED STATES AND CANADA**

and the

**INTERNATIONAL UNION, BRICKLAYERS AND ALLIED CRAFTSMEN**

Effective June 6, 1983